IN RE ESTATE OF JOHN BLOEDORN.
OTTO F. PAEGE, ADMINISTRATOR, APPELLANT, V. FERDINAND
SCHMOLDT, APPELLEE.

280 N. W. 908

FILED JULY 8, 1938. No. 30342.

*A. R. Oleson,* for appellant.

*Moodie & Burke, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

This is an appeal from the district court for Cuming county, wherein the district court found no errors in the proceedings in the county court, dismissed the case, and held, as a matter of law, that the proceedings in the county court were inquisitory in their nature, and that the court's jurisdiction extended no further than the examination of the person cited.

The proceedings originated in the county court of Cuming county for the administration of the estate of John Bloedorn, deceased, under the provisions of section 30-407, Comp. St. 1929, which reads:

"If any executor or administrator, heir, legatee, creditor, or other person interested in the estate of any deceased person shall complain to the judge of the county court, on oath, that any person is suspected to have concealed, embezzled, carried away or disposed of any money, goods, or chattels of the deceased, or that such person has in his

possession or knowledge any deeds, conveyances, bonds, con-tracts or other writings, which contain evidence of or tend to disclose the right, title, interest or claim of the deceased to any real or personal estate, or any claim or demand, or any last will and testament of the deceased, the said judge may cite such suspected person to appear before the court of probate, and may examine him on oath upon the matter of such complaint."

The record discloses the following: On June 22, 1932, the administrator filed a complaint in the county court of Cuming county against Ferdinand Schmoldt and Martha Schmoldt, stating that they had in their possession a certificate of deposit, issued by the First National Bank of Beemer, Nebraska, to John Bloedorn, dated April 6, 1932, which they refused to deliver upon the demand of the administrator. An examination established that before Bloedorn's death Mr. Schmoldt was in possession of the certificate of deposit described, cashed the certificate at the First National Bank of Beemer, and deposited the proceeds in that bank about a week before Bloedorn died. Bloedorn roomed at the Schmoldt home during his lifetime, and all the papers belonging to him had been delivered previously to the administrator and the administrator's attorney. Schmoldt, the witness, had no papers in his possession belonging to the deceased at the time of his examination. About a year previous to Bloedorn's death the witness had borowed $150 from him, and Bloedorn took it out in board. The witness had never borrowed any other money from the deceased. The examination was continued to July 13, 1932, when another application was filed, praying that A. J. Leuthauser, an officer of the First National Bank of Beemer, be cited to appear on that day and produce the records of the bank with reference to the accounts of Mr. and Mrs. Schmoldt from April 1, 1929, to the date of Bloedorn's death, May 13, 1932. According to these records, on May 7, 1932, Schmoldt cashed a 1,600-dollar certificate of deposit and placed the money to his credit in the bank; the certificate had been indorsed by the deceased,

and witness recognized his signature. He testified that in the three-year period from April, 1929, to May, 1932, Schmoldt had deposited 11 checks totaling $813.75, which had been issued to him by the deceased. A bill of exceptions was made from this evidence, and a transcript of the pleadings and an appeal taken to the district court.

The only question in this case, which is a question of first impression in this state, is whether or not sections 30-407 and 30-408, Comp. St. 1929, are statutes by which examination of persons may be had solely for the purpose of ascertaining whether or not they have certain assets of the deceased's estate in their possession; and whether or not the statute is purely of an inquisitory nature. By a close scrutiny of the statute, it will be readily seen that it does not provide that the county court make any order in respect to the property that may be exposed by an examination of the person cited to appear before the court. Section 30-408, Comp. St. 1929, provides that for refusal to appear and answer interrogatories the court may punish the person cited by committing him to jail. Our statute is analogous to the statute adopted in the state of Massachusetts.

In the case of *Selectmen of Boston v. Boylston*, 4 Mass. *318, the court, speaking with reference to a statute, as disclosed by section 11, ch. 32, St. 1783 of Massachusetts, which authorized the probate court to convene before them and examine upon oath any person suspected of embezzling, conveying away goods or effects of a deceased person, stated that the "authority of the court, under that provision, extends only to an examination for the purpose of discovery. No other power is given by the statute; and, in that extent, it is analogous to the power exercised by the court of chancery, in England, upon a bill for discovery." This case was decided at the March term, 1808.

In the case of *Martin v. Clapp*, 99 Mass. 470, in considering generally section 6, ch. 96, Gen. Sts., which follows: "Upon complaint made to the probate court by an executor, administrator, heir, legatee, creditor or other

person interested in the estate of a person deceased, against any one suspected of having fraudulently received, concealed, embezzled or conveyed away any money, goods, effects or other estate, real or personal, of the deceased, the court may cite such suspected person, though he is executor or administrator, to appear and be examined on oath upon the matter of the complaint. If the person so cited refuses to appear and submit to examination, or to answer such interrogatories as are lawfully propounded to him, the court may commit him to the jail, there to remain in close custody until he submits to the order of the court. The interrogatories and answers shall be in writing, signed by the party examined, and filed in the probate court." The court in the body of the opinion stated (p. 471) : "No supporting and no opposing testimony is received. The discovery is not only the purpose, but the end of the proceedings under the complaint."

In the case of *Saddington's Estate v. Hewitt*, 70 Wis. 240, 35 N. W. 552, the court said in the opinion (p. 247) : "We are also of the opinion that under secs. 3825, 3826, R. S., no order can properly be made in regard to the property, if any, in the hands of the appellant, and concerning which his examination may be taken under said sections. These sections are probably taken from the General Statutes of Massachusetts. The law in Massachusetts was first enacted in 1783. See sec. 11, ch. 32, p. 104, Laws of Mass. 1783, reenacted in Rev. Stats. 1836 as sec. 7, ch. 65, p. 429; again, in Gen. Stats. Mass. as sec. 6, ch. 96; and again as sec. 1, ch. 133, Pub. Stats. Mass. 1882. There has been no material alteration in the act from its first enactment. This law was enacted in Michigan. * * * The statutes of Massachusetts and Michigan are substantially like secs. 3825, 3826, R. S. In Massachusetts and Michigan, the law has always been construed as simply giving the probate court the power to examine the party charged on oath, and as giving no power to make any adversary order in such matters; the object being to aid the parties interested in the estate of a deceased person in discovering property be-

longing to said estate, and as preliminary to the bringing of some proper action for the recovery thereof, and not as furnishing a method of recovering such property from the party accused for the benefit of the estate"—citing *Selectmen of Boston v. Boylston,* and *Martin v. Clapp, supra;* and Michigan cases. Continuing the court said: "It seems very plain, on the reading of secs. 3825, 3826, that there was no intention that the proceeding should be in the nature of an action to recover the property embezzled or disposed of. Had such been the intention of the legislature, it is certain some provision would have been made authorizing the court to make some order in regard to it. The only thing provided for by the statute is the examination of the party charged, and power given to compel him to submit to such examination, and there the power granted ends."

The above statute was again before the supreme court of Wisconsin in *Estate of Schaefer,* 189 Wis. 395, 207 N. W. 690, which held the statute to be a discovery statute and conferred no jurisdiction on the county court to render judgment for the possession of property.

The opinion in *Estate of Krauss,* 212 Wis. 561, 250 N. W. 388, is the latest expression of the Wisconsin supreme court on this subject. It there held: "Sec. 312.06, Stats., authorizing a citation to discover assets of a deceased person, is a mere discovery statute and vests in the county court no jurisdiction beyond that of discovery. The court has no power to make an order concerning the disposition of the property."

The Nebraska statute has adopted, in substance, the Massachusetts statute, as herein set out; and in *Medow v. Riggert,* 132 Neb. 429, 272 N. W. 238, the first paragraph of the syllabus reads: " 'If a statute adopted from another state had been construed by the courts of that state prior to its adoption here, the same construction should be given ordinarily in this state in the absence of any indication of a contrary intention on the part of the legislature.' *Goble v. Simeral,* 67 Neb. 276, 93 N. W. 235."

Each case cited by the appellant has been an adversary action in a court of competent jurisdiction, where issues were framed and tried.

Section 30-407, Comp. St. 1929, as hereinbefore set out, is construed to be a mere discovery statute and to vest the county court with no jurisdiction beyond that of discovery. The power of the county court is exhausted when the discovery is had, and the proceedings with reference to the discovery terminate at this point.

Some statement is made that the trial court held this case under advisement for a period of five years. While we see no reason for the court so doing, yet the personal representative of the deceased person, during all the period of time, had a proper remedy which he might have pursued against the Schmoldts in a court of equity.

AFFIRMED.