ESTATE OF NOLS: WILL, Administrator, Appellant, vs. VANDER ZANDEN, Respondent.*

*May 14—July 1, 1947.*

* Motion for rehearing denied, with $25 costs, on September 9, 1947.

For the appellant there was a brief by *Kaftan, Rahr & Kaftan* of Green Bay, and oral argument by *Robert Kaftan.*

For the respondent there was a brief by *Davis, Soquet & Davis* of Green Bay, and oral argument by *Donald E. Soquet* and *M. E. Davis, Jr.*

RECTOR, J.   Two questions are raised: (1) Did the county court have jurisdiction to determine whether there had been a valid gift *causa mortis?*   (2) Was there such a gift?

The appellant Will relies upon several cases beginning with *Saddington's Estate v. Hewitt* (1887), 70 Wis. 240, 35 N. W. 552. In that case Saddington's estate was in probate and a petition was filed under the section now numbered sec. 312.06, Stats., claiming that assets of the estate were concealed and wrongfully withheld from those entitled to receive them by a stranger to the proceedings. This court said that section provided solely for a discovery of assets claimed to be withheld from an administrator or executor and that it did not contemplate a proceeding in the nature of an action to recover such property. It held that the county court could make no order with reference to any such property of the deceased as might be discovered.

In *Estate of Schaefer* (1926), 189 Wis. 395, 207 N. W. 690, we adhered to the *Saddington* decision in the face of a claim that the statute had since been amended to provide for the issuance of an order by the county court in relation to such property as might be discovered. The rule was reaffirmed in *Estate of Krauss* (1933), 212 Wis. 561, 250 N. W. 388.

In *Central Wisconsin Trust Co. v. Schumacher* (1939), 230 Wis. 591, 284 N. W. 562, an executor of an estate listed certain securities in the inventory as held jointly by himself and the deceased. The county court in its final judgment assigned the securities together with other property in accordance with the terms of the will. This court held that the adverse claim of the executor as an individual entitled to the securities by right of survivorship appeared upon the face of the inventory and the county court was without jurisdiction to assign the securities by final judgment. It was said, in reliance upon *Estate of Krauss* and *Saddington's Estate v. Hewitt, supra,* that a county court in probate proceedings does not have jurisdiction to try title to property which is in dispute. The case was followed by *Estate of Martin* (1944), 246 Wis. 133, 16 N. W. (2d) 306, in which an executrix, petitioning for allowance of her final account, was ordered to pay into court a sum of money

which she claimed in her individual capacity as a gift *causa mortis* from the testatrix. It was again stated, in reliance upon *Central Wisconsin Trust Co. v. Schumacher* and the other cases to which we have referred, that the county court could not determine adverse claims to property in dispute.

There is no reference in these cases to sec. 253.03, Stats., upon which respondent relies and which in part provides that "The jurisdiction of the county court shall extend to . . . all matters relating to the settlement of the estates of such deceased persons and of such minors." We have held that under this section the county court upon petition has jurisdiction to pass upon the respective claims of petitioner and the administrator to assets in the hands of the administrator. *Estate of Johnson* (1921), 175 Wis. 248, 185 N. W. 180. And without referring to the section it was recognized in *Estate of Horkan* (1927), 193 Wis. 286, 214 N. W. 438, that upon the filing of a claim to certain assets in the hands of an executor the county court could determine title as between the claimant and the executor. In *Estate of Abddulah* (1934), 214 Wis. 336, 252 N. W .158, upon a petition to strike certain items from the inventory, the precise procedure employed in the case before us, it was held that the matter involved a contest as to title of the items between the administrator and the claimant and the jurisdiction of the county court to decide the question was recognized. Again, without discussing the matter of jurisdiction, a motion to strike assets from the inventory upon the ground that there had been a gift *causa mortis* to the claimant was decided on the merits in *Estate of Schreihart* (1936), 223 Wis. 218, 270 N. W. 71, and the judgment of the county court was reversed with directions to grant the petition.

The cases fall into two categories:

Cases denying jurisdiction involve disputes where the property was in the possession of the person claiming adversely to an estate; cases sustaining jurisdiction involve disputes where the property was in the hands of an administrator or executor

and the claim was asserted by the adversary upon application to the court.

Thus, there is a definite basis of distinction, although it must be conceded that it is illogical. An adjudication of a disputed title claim between an executor or administrator and one claiming adversely to an estate relates to the settlement of the estate of the deceased whether the property is held by the adverse party or by the executor or administrator. There is no basis in the language of sec. 253.03, Stats., conferring jurisdiction for any distinction, nor can procedural difficulties afford such a basis. The county court is vested with jurisdiction to issue such citations and other process as may be necessary to enforce its jurisdiction. Sec. 253.06.

We have three alternatives. We can, (1) deny jurisdiction in the county court to adjudicate title, and overrule cases to the contrary; (2) uphold jurisdiction in the county court, and overrule cases to the contrary; (3) follow the decisions establishing the distinction to which we have referred.

We have chosen the third alternative. There must be some certainty in law, some obligation to follow precedent; else there is no law. In deference to that principle we give effect to the distinction as it has been applied over the years. The property involved in this dispute is in the hands of the administrator, and we hold that the court had jurisdiction to determine the question of title.

Upon the question as to whether there was a valid gift, the trial court found that the deceased delivered the items of personal property involved to Vander Zanden by walking into Vander Zanden's store, placing a parcel containing the property on a showcase and saying, "Here is a parcel and you keep it, and if I don't come back, you can have it." It found that at the time of the delivery of the parcel the decedent was seriously ill with a disease which caused his hospitalization the next day and which shortly thereafter was responsible for his death, and that at the time of the delivery he realized the se-

riousness of his condition. It also found that the deceased delivered the parcel intending a gift to Vander Zanden and that he died without revoking it. In a memorandum decision accompanying the findings it said that at the time the gift was made the deceased realized his death was not far off and that the language "if I don't come back" had reference to that contingency.

We cannot say that these findings are contrary to the great weight and clear preponderance of the evidence, and we are accordingly bound by them. *State v. M. Supple & Sons Co.* (1940) 234 Wis. 255, 290 N. W. 139. It would serve no useful purpose to review evidence which would warrant other findings.

The most difficult question presented is whether the findings support the judgment. The appellant, relying upon *Basket v. Hassell* (1882), 107 U. S. 602, 2 Sup. Ct. 415, 27 L. Ed. 500, and *Schultz v. Becker* (1907), 131 Wis. 235, 110 N. W. 214, contends that they do not. The contention is based upon the argument that a gift made to take effect upon death is a testamentary disposition and invalid unless there is compliance with the statute of wills.

*Basket v. Hassell, supra,* is authority for the appellant's position. It clearly held that a gift *causa mortis* conditioned upon the donor's death is invalid as a testamentary disposition and that in order to be valid such a gift must pass title *in præsenti* upon the conditions subsequent of revocation and the other happenings which have been held to defeat it.

*Basket v. Hassell, supra,* was approved by this court in *Schultz v. Becker, supra.* In *Hoks v. Wollenberg* (1932), 209 Wis. 276, 243 N. W. 219, 245 N. W. 128, we upheld a gift made in terms of death as a condition precedent and arrived at a result diametrically at variance with *Basket v. Hassell* and *Schultz v. Becker.* The question we have to decide is whether we will adhere to *Hoks v. Wollenberg* or return to *Schultz v. Becker.*

We hold to the rule of *Hoks v. Wollenberg, supra.* We do not believe there is any basis for a distinction between conditions precedent and subsequent in such a case. As a practical matter it should be obvious that out of a thousand would-be donors there would probably not be one who would normally make a gift in the form of conditions subsequent. He would normally make it in terms of "This is yours if I die"—a condition precedent. Therefore, if we were to adhere to a rule of law requiring that such gifts be made upon conditions subsequent, we would in effect invalidate practically all such gifts that are not made under advice of counsel; and such advice is infrequent by reason of the very nature of the gifts and the circumstances under which they are made.

A great deal has been written by courts and textbook writers upon the subject of gifts *causa mortis.* It is generally agreed that during the lifetime of the donor the donee holds an inchoate title which ripens into absolute title at the donor's death from the illness or peril which he apprehended in making the gift. This court has so stated.

"A *donatio causa mortis* is a gift absolute in form, made by the donor in anticipation of his speedy death, and intended to take effect and operate as a transfer of title only upon the happening of the donor's death." *Crook v. First Nat. Bank of Baraboo* (1892), 83 Wis. 31, 36, 52 N. W. 1131.

If an absolute title is intended to vest only upon the donor's death, it is immaterial whether it was intended to vest by fulfilment of a condition precedent or removal of conditions subsequent. In either case, death being the contemplated event upon which absolute title is to pass, the disposition is in a broad sense testamentary. For that matter, gifts *causa mortis* have long been recognized as testamentary in character. In the quaint style of his time an eminent British author described such a gift as:

". . . when any being in perill of death, doth give something, but not so, that it shall presently be his that received it,

but in case the giver do dye.  This . . . kinde of gift, is that which is compared to a legacy. . . ."  Swinburne, Wills (1640 ed.), 27, sec. 7.

In *Jones v. Brown* (1857), 34 N. H. 439, it is said:

". . . a *donatio causa mortis* is of the nature of a legacy.  It becomes a valid gift only upon the decease of the donor."

There have been many other statements to the same effect.

With due deference to the attempts that have been made to in some way account for the transfer of title during life, it seems to us that such considerations are not important.  It might be important in relation to collateral matters to determine whether title passes during life or at death, but for purposes of determining whether such gifts are valid, it is not.  They have been held valid with practical unanimity for many years in the face of deliveries upon condition that they shall take effect at death.  Actually, the doctrine of gifts *causa mortis* appears to be an exception to the rule against testamentary disposition except by will.  It has probably been established and recognized upon the basis of an unspoken acceptance that delivery of the subject of the gift during life is an adequate safeguard against abuses at which the statute of wills is aimed.

The requirements of a valid gift *causa mortis* are that there be an intention to make a gift effective at death; it must be made with a view to the donor's death from present illness or from an external and apprehended peril; the donor must die of that ailment or peril; there must be a delivery.  *Hoks v. Wollenberg, supra.*  The only question raised here as to the sufficiency of the findings in support of these requirements is in reference to delivery.  That requirement was clearly met so far as physical delivery was concerned.  The condition precedent, upon which the delivery was made, did not affect its validity because it expressed only that which the law implies.

*By the Court.*—Judgment affirmed.